IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, AFL-CIO, | )<br>)<br>) Civil Action No.<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| RURAL MEDIA GROUP, INC, and RFD-TV, LLC, | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

1. The American Federation of Musicians of the United States and Canada, AFL-CIO ("AFM") is a labor union representing instrumental musicians throughout North America. The principal place of business for AFM is New York, New York.

2. Rural Media Group, Inc. ("RMG") is an entity with a principal place of business in Gretna, Nebraska and which conducts operations in Davidson County, Tennessee at 49 Music Square West. RMG has not registered with the Tennessee Secretary of State to conduct business operations in Tennessee and may be served through the Tennessee Secretary of State under authority of T.C.A. 48-15-104(b).

3. RFD-TV, LLC ("RFD") is an entity with a principal place of business in Gretna, Nebraska and which conducts operations in Davidson County, Tennessee at 49 Music Square West. RFD has not registered with the Tennessee Secretary of State to conduct business operations in Tennessee and may be served through the Tennessee Secretary of State under authority of T.C.A. 48-204-104(b).

4. This is a civil action in which AFM seeks legal and equitable relief against RMG and RFD. Jurisdiction is invoked under 28 U.S.C. § 1331, as this action arises under laws of the United States; 28 U.S.C. § 1332, as the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000) exclusive of late fees, interest and costs, and is between organizations in different states; 28 U.S.C. § 1337, as this action arises under an Act of Congress regulating commerce; 29 U.S.C. § 185, as this action seeks legal and equitable redress for breach of a collective bargaining agreement; and, 28 U.S.C. § 4001 as this action seeks relief under the Digital Millennium Copyright Act.

5. AFM is a party to a collective bargaining agreement known as the National Public Television Agreement ("NPT Agreement") and a business venture known as Ray Stevens Productions, LLC ("Stevens LLC") is a signatory employer to the AFM/NPT Agreement and the AFM Basic Cable Agreement.

6. The NPT Agreement covers the terms and conditions of work for instrumental musicians represented by AFM, with those musicians appearing in episodes of a television show produced by Stevens LLC named "Ray Stevens CabaRay Nashville".

7. The episodes of Ray Stevens CabaRay Nashville are audio-visual works consisting of a series of tapes or films depicting the related images of the instrumental musicians who appeared on each episode, and which are intrinsically intended to be displayed by the use of machines or devices such as viewers or electronic equipment, together with accompanying sound. The audio-visual works captured the images of the instrumental musicians represented by AFM and who performed on the episodes.

8. The NPT Agreement provides that following broadcast by Stevens LLC of the episodes, copies of the original episodes could be exhibited via reuse to the general public provided

the instrumental musicians, whose images appeared on those episodes, would receive additional wages and associated pension contributions.

9. When performing on the episodes, all of which embodied musical performances of instrumental musicians and/or images of those musicians rendering musical services, the instrumental musicians and AFM relied upon the terms and conditions of the NPT Agreement that assured additional compensation would be paid in the event of future reuse.

10. Stevens LLC is a party to a Program License Agreement with RMG, allowing RMG to rebroadcast the Ray Stevens CabaRay Nashville episodes over television stations and networks associated with and/or owned by RMG. The Program License Agreement provided that RMG would be responsible for payment of all union or guild fees, residuals or other payments to any union or guild arising from RMG's use of the episodes. When RMG and Stevens LLC entered into the Program License Agreement, RMG knew or had reason to know about the NPT Agreement and the obligation to provide additional compensation to the instrumental musicians in the event episodes of Ray Stevens CabaRay Nashville were rebroadcast by RMG.

11. The language from the Program License Agreement described in the preceding paragraph expresses a clear intent that the instrumental musicians would be compensated by RMG in the event of reuse; and, was for a commercial purpose and an advantage to RMG. Numerous of the episodes have been reused, exhibited, and displayed by RMG but RMG has failed and refused to make payments to the instrumental musicians as required by the NPT Agreement and the Program License Agreement.

12. This failure and refusal of RMG is a breach of the NPT Agreement and the Program License Agreement and has proximately caused damage to AFM and the instrumental musicians it represents.

13. Damage caused by RMG to AFM and the instrumental musicians is in excess of seventy-five thousand dollars ($75,000) and will increase with late fees and if RMG broadcasts another one of the episodes.

14. It was unfair for RMG to reuse the episodes without compensation to AFM for the use and benefit of the instrumental musicians. As a result, RMG has been unjustly enriched and it is inequitable for RMG to have reused the episodes without assuring payment of compensation to instrumental musicians. In equity, RMG should not be allowed to retain the economic benefit derived from its conduct described herein and should be ordered to pay restitution and pre-judgment interest to the instrumental musicians.

15. Despite numerous invoices being sent with demands that RMG pay AFM for the use and benefit of the instrumental musicians for broadcasts of the episodes, RMG has failed and refused to do so. It would therefore be futile to attempt to make further demands that RMG pay AFM and the instrumental musicians it represents.

16. RMG's action and inaction gives rise to several causes of action including: unjust enrichment; violation of the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860; breach of contract; estoppel; and breach of the covenant of good faith and fair dealing.

17. RMG has damaged the instrumental musicians represented by AFM due to its action and non-action described above and the Court should enter a judgment in favor of AFM for the instrumental musicians and against RMG in the amount of seventy-five thousand dollars ($75,000) or more depending upon proof.

18. AFM is a party to a collective bargaining agreement known as the Basic Cable Television Agreement ("Cable Agreement") and a business venture known as Marty Stuart Tours, LLC ("MST") is also a party to the Cable Agreement.

19. The Cable Agreement covers the terms and conditions of work for instrumental musicians represented by AFM, with those musicians appearing in episodes of a television show produced by MST named "The Marty Stuart Show".

20. The episodes of The Marty Stuart Show are audio-visual works consisting of a series of tapes or films depicting the related images of the instrumental musicians who appeared on each episode, and which are intrinsically intended to be displayed by the use of machines or devices such as viewers or electronic equipment, together with accompanying sound. The audio-visual works captured the images of the instrumental musicians represented by AFM and who performed on the episodes.

21. The Cable Agreement provides that upon broadcast or reuse by MST of the episodes, the instrumental musicians whose images appeared on those episodes would receive wages and associated pension contributions

22. When performing on the episodes, all of which embodied musical performances of instrumental musicians and/or images of those musicians rendering musical services, the instrumental musicians and AFM relied upon the terms and conditions of the Cable Agreement that assured additional compensation would be paid in the event of future reuse.

23. MST is a party to a Program License Agreement with RFD, allowing RFD to broadcast The Marty Stuart Show episodes over television stations and networks associated with and/or owned by RFD. The Program License Agreement provides that RFD would be responsible for making payment of all fees, royalties or other payments required to be made to the instrumental musicians performing on or associated with broadcasts of The Marty Stuart Show. When RFD and MST entered into the Program License Agreement, RFD knew or had reason to know about the Cable Agreement and the obligation to provide compensation to the instrumental musicians when episodes of The Marty Stuart Show were broadcast by RFD.

24. The language from the Program License Agreement described in the preceding paragraph expresses a clear intent that the instrumental musicians would be compensated by RFD in the event of a broadcast; and, was for a commercial purpose and an advantage to RFD. Numerous of the episodes have been exhibited, displayed, or reused by RFD and RFD made payments to AFM for the use and benefit of the instrumental musicians for broadcast of the episodes until 2019. Beginning in 2019, and continuing to the present, RFD has failed and refused to make payments to AFM for the use and benefit of the instrumental musicians as required by the Cable Agreement and the Program License Agreement.

25. This failure and refusal of RFD is a breach of the Program License Agreement and has proximately caused damage to AFM and the instrumental musicians it represents.

26. Damage caused by RFD to AFM and the instrumental musicians is in excess of seventy-five thousand dollars ($75,000) as of January 2020 and will continue to increase as RFD continues to broadcast additional episodes of the Marty Stuart Show.

27. It was unfair for RFD to reuse the episodes without compensation to AFM for the use and benefit of the instrumental musicians. As a result, RFD has been unjustly enriched and it is inequitable for RFD to have reused the episodes without assuring payment of compensation to instrumental musicians. In equity, RFD should not be allowed to retain the economic benefit derived from its conduct described herein and should be ordered to pay restitution and pre-judgment interest to the instrumental musicians.

28. Despite demands that RFD pay AFM for the use and benefit of the instrumental musicians for broadcasts of the episodes in 2019 and thereafter, RFD has failed and refused to do so. It would therefore be futile to attempt to make further demands that RFD pay AFM and the instrumental musicians it represents.

29. RFD's action and inaction give rise to several causes of action including: unjust enrichment; violation of the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860; breach of contract; estoppel; and, breach of the covenant of good faith and fair dealing.

30. RFD has damaged the instrumental musicians represented by AFM due to its action and non-action described above and the Court should enter a judgment in favor of AFM for the instrumental musicians and against RFD in the amount of seventy-five thousand dollars ($75,000) or more depending upon proof.

31. As of the date this complaint is filed, RFD continues to broadcast episodes of The Marty Stuart Show without payment to the instrumental musicians represented by AFM. MST has demanded that RFD cease and desist from broadcasting the shows without payment to the instrumental musicians, and RFD has failed and refused to cease and desist. As a result, the Court should enter an injunction requiring that RFD cease and desist from broadcasting The Marty Stuart Show without payment to the instrumental musicians represented by AFM.

WHEREFORE, AFM prays as follows:

A. The Court find, adjudge and decree that RMG and RFD engaged in the wrongful actions complained of herein, and that the Court award AFM full compensation and damages for the harm the instrumental musicians have suffered at the hands of RMG and RFD so that AFM can disburse proper compensation to the instrumental musicians;

B. The Court decree that RMG and RFD have been unjustly enriched by its wrongful conduct, and award restitution to AFM and the instrumental musicians.

C. That AFM recover the costs of this suit, including applicable late fees, reasonable attorney fees and costs;

D. The Court award AFM all available pre-judgment and post-judgment interest, to the fullest extent available under law or equity; and

E. The Court enter a preliminary and then permanent injunction requiring that RFD cease and desist from broadcasting The Marty Stuart Show without payment to the instrumental musicians represented by AFM.

F. The Court grant such other, further and general relief as is just and proper.

Respectfully submitted,

*/s/ R. Jan Jennings*
R. Jan Jennings, BPR No. 1536
Callie Jennings, BPR No. 35198
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel. (615) 254-8801
Email : janj@bsjfirm.com
calliej@bsjfirm.com

*Attorneys for Plaintiff AFM*